1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   JENNIFER HARBERS,                          CASE NO. C19-0968JLR

11                        Plaintiff,            ORDER DENYING PLAINTIFF'S
                                                MOTION TO REMAND
         v.
12
     EDDIE BAUER, LLC,
13
                         Defendant.
14

15              **I.    INTRODUCTION**

16       Before the court is Plaintiff Jennifer Harbers' motion to remand this action to King

17   County Superior Court.  (Mot. (Dkt. # 13).)  The court has considered Ms. Harbers'

18   motion, the parties' submissions related to the motion, Ms. Harbers' complaint (FAC

19   (Dkt. # 1-2)), relevant portions of the record, and the applicable law.  Being fully

20   //

21   //

22   //

advised,[1] the court DENIES Ms. Harbers' motion to remand.

## II.    BACKGROUND

Ms. Harbers filed a putative class action complaint in King County Superior Court alleging that Eddie Bauer violated certain provisions of the Washington Commercial Electronic Mail Act ("CEMA"), RCW ch. 19.190, and the Washington Consumer Protection Act ("CPA"), RCW ch. 19.86.  (*See generally* FAC.)  Ms. Harbers alleges that since November 2017, she has received roughly 43 Eddie Bauer marketing e-mails containing "xx% Off Everything," "xx% Off Your Purchase," "Take xx% Off," "Get xx% Off," or similar language in the subject line.  (*Id.* ¶¶ 24-28.)

Ms. Harbers contends that these subject lines contain two types of false or misleading statements.  First, Ms. Harbers asserts that the percentage-off statements are false or misleading because "in reality, Eddie Bauer is not offering the products at the promised discount."  (*Id.* ¶ 2.)  Ms. Harbers alleges that she thought the percentage-off discounts indicated "a percentage off the price at which Eddie Bauer previously offered its products in good faith for a significant period of time."  (*Id.* ¶ 25.)  Ms. Harbers alleges that Eddie Bauer instead calculated these percentages from "fictitious list prices at which Eddie Bauer never offered its products, rarely offered its products, [or] temporarily offered its products in bad faith."  (*Id.*)

//

---

[1] Only Defendant Eddie Bauer, LLC ("Eddie Bauer") requests oral argument on this motion.  (*See* Resp. (Dkt. # 16) at 1).  The court does not consider oral argument necessary to its disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

Second, Ms. Harbers contends that "Everything" and "Off Your Purchase" are further false or misleading, and that she thought these subject lines meant that all Eddie Bauer's products would be offered at a discount. (*See id.* ¶¶ 26-28.) However, Ms. Harbers alleges that Eddie Bauer excluded some products from these discounts, such as sleeping bags, tents, and third-party brand products. (*See id.*)

Ms. Harbers claims that the 43 Eddie Bauer e-mails described above violate CEMA, which regulates various electronic practices, including the transmission of commercial e-mail messages.[2] Specifically, Ms. Harbers alleges a violation of the following CEMA provision:

> No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial [e-mail] from a computer located in Washington or to an [e-mail] address that the sender knows, or has reason to know, is held by a Washington resident that . . . [c]ontains false or misleading information in the subject line.

*See* RCW 19.190.020(1)(b). Although CEMA does not provide a private right of action for damages, recipients of commercial e-mails containing false or misleading subject lines can sue for injunctive relief. *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1155 n.3 (Wash. 2017) ("While an action for monetary damages is limited to phishing, we note that a plaintiff may bring an action to enjoin any CEMA violation."); *see also* RCW 19.190.090(1) ("A person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations.").

//

---

[2] CEMA defines a "commercial electronic mail message" as "an electronic mail message sent for the purpose of promoting real property, goods, or services for sale or lease." RCW 19.190.010(2).

In addition to the injunctive relief available under CEMA, a recipient of an unlawful commercial e-may can bring a civil action against the sender under the CPA for either statutory or actual damages. *See Gragg v. Orange Cab Co., Inc.*, 145 F. Supp. 3d 1046, 1051 (W.D. Wash. 2015). CEMA explicitly provides:

> It is a violation of the consumer protection act, chapter 19.86 RCW, to conspire with another person to initiate the transmission or to initiate the transmission of a commercial [e-mail] message that . . . [c]ontains false or misleading information in the subject line.

RCW 19.190.030(1)(b). Thus, "[u]nder RCW 19.190.030(1), it is a violation of the Washington CPA to violate RCW 19.190.020." *Ferguson v. Quinstreet, Inc.*, C07-5378RJB, 2008 WL 3166307, at *10 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom. Ferguson v. Active Response Grp.*, 348 F. App'x 255 (9th Cir. 2009). Interpreting RCW 19.190.030(1)(b), Washington and federal courts have held that a plaintiff states a CPA claim solely by alleging the transmission of a commercial e-mail containing false or misleading information in the subject line. *See State v. Heckel*, 24 P.3d 404, 407 (Wash. 2001) ("RCW 19.190.030 makes a violation of [CEMA] a per se violation of the [CPA]."). Indeed, by alleging a CEMA violation of RCW 19.190.020, a plaintiff alleges all five elements of a CPA violation: "(1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property" that is (5) causally linked to the unfair or deceptive act. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1065 (9th Cir. 2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535-37 (Wash.

//

1986)); *Wright*, 406 P.3d at 1155 ("We conclude that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law.").

Of particular relevance, a plaintiff alleging a CEMA violation under RCW 19.190.030(1) need not allege injury or causation beyond the CEMA violation. *See Hoffman v. One Techs., LLC*, No. C16-1006RSL, 2017 WL 176222, at *4 (W.D. Wash. Jan. 17, 2017) (concluding that the plaintiff stated a CPA claim under RCW 19.190.030(1)(b) by alleging that the defendant transmitted commercial e-mails containing false or misleading subject lines, even though he failed to separately allege an economic injury to his business or property). Moreover, the Washington Supreme Court recently held that CEMA's liquidated damages provision, RCW 19.190.040, establishes the injury and causation elements of a CPA claim as a matter of law.[3] *Wright*, 406 P.3d at 1155.

Some courts have gone in a different direction when interpreting state statutes analogous to CEMA. *See, e.g.*, *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d

//

---

[3] Although the plaintiff in *Wright* alleged a CEMA commercial text message violation and Ms. Harbers alleges a commercial e-mail violation, the same liquidated damages provision applies to both text message and e-mail violations. *See* RCW 19.190.040(1) ("Damages to the recipient of a commercial [e-mail] message or a commercial electronic text message sent in violation of this chapter are five hundred dollars, or actual damages, whichever is greater.") Additionally, "there is no indication . . . that the legislature intended to regulate text messages and e-mails differently." *Wright*, 406 P.3d at 1154. Based on the reasoning in *Wright*, the court concludes that the Washington Supreme Court would hold that RCW 19.190.040(1) also establishes injury and causation as a matter of law for CPA claims based on CEMA commercial e-mail violations. *See Teleflex Med. Inc.*, 851 F.3d at 982 ("In absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."). Neither Ms. Harbers nor Eddie Bauer contest that by alleging a CEMA violation, a plaintiff alleges all five elements of a CPA claim. (*See generally* Mot.; Resp.)

748, 766 (D. Md. 2013) (concluding that, for claims under the Maryland Commercial Electronic Mail Act, a plaintiff must show injury-in-fact as "the availability of statutory damages does not necessarily mean that the state legislature did not intend that a prospective litigant demonstrate at least some sort of adverse impact as a pre-requisite to suit."). Nevertheless, this court follows Washington Supreme Court precedent on matters of Washington law. *See Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 851 F.3d 976, 982 (9th Cir. 2017) ("When interpreting state law, federal courts are bound by decisions of the state's highest court.") (internal quotation marks and citations omitted).

Ms. Harbers alleges two causes of action: (1) a *per se* violation of the CPA (*see* FAC ¶¶ 45-63); and (2) a CEMA violation (*see id.* ¶¶ 64-74). In her first cause of action, Ms. Harbers seeks both injunctive relief and statutory damages. (*See id.* ¶ 3.) Ms. Harbers estimates that statutory damages will be $500 to each putative class member multiplied by 43 violative e-mails, the total of which exceeds one billion dollars. (*See id.* at 18.) Under her second cause of action, Ms. Harbers seeks only injunctive relief. (*See id.*)

On June 21, 2019, Eddie Bauer removed this action to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Not. of Removal (Dkt. # 1) at 1.) In response, Ms. Harbers moves to remand, arguing that she intentionally does not allege a sufficiently concrete injury-in-fact to establish Article III standing in federal court. (*See* Mot. at 5.) Ms. Harbers explains her position as a "non-traditional—but increasingly common—tack" based on state law. (*See id.*) Specifically, Ms. Harbers

contends that she intentionally pleaded her claims to be non-removable.  (*Id.*)  The court now considers Ms. Harbers' motion.

### III.  ANALYSIS

**A.  Standard for Motion to Remand**

A civil action over which federal courts have original jurisdiction may be removed by a defendant from state to federal district court.  28 U.S.C. § 1441(a).  "If it appears that the federal court lacks jurisdiction, however, 'the case shall be remanded.'"  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 143 (2005) (quoting 28 U.S.C. § 1447(c)).

CAFA vests federal courts with original jurisdiction over class actions in which: (1) the amount in controversy exceeds $5,000,000; (2) diversity of citizenship exists between at least one plaintiff and one defendant; and (3) the number of plaintiffs in the class is at least one hundred.  28 U.S.C. § 1332(d)(2), (5), (6).  However, if a plaintiff lacks Article III standing in a case removed under CAFA, the district court must remand the case.  *Polo v. Innovention Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA").  Because state courts are not bound by the constraints of Article III, remand is the correct remedy for cases that lack federal subject matter jurisdiction.  *Id.*

Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), the removing party bears the burden of establishing federal jurisdiction.  *Washington v. Chimei Innolux*

*Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal."). Consequently, as the defendant seeking to establish federal jurisdiction, Eddie Bauer must demonstrate that Ms. Harbers has alleged a concrete injury-in-fact. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) ("The party invoking federal jurisdiction bears the burden on establishing the elements of Article III jurisdiction.").

**B.  Article III Standing**

The standing doctrine serves to ensure that the authority of the federal courts extends only to "cases" and "controversies" as mandated by Article III of the United States Constitution.  U.S. Const. art. III, § 2; *Spokeo, Inc. v. Robins*, — U.S. —, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  In the context of a class action, the class representatives must have standing.  *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)) (internal quotation marks omitted).

The "irreducible constitutional minimum of standing" consists of three elements: (1) an "injury in fact" (2) that is "fairly traceable to the challenged action of the defendant" and (3) "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations, internal quotation marks, and internal citations omitted).  Here, the parties do not dispute the second and third elements.  (*See*

*generally* Mot.; Resp.)  The court finds no independent basis for questioning the second and third elements of standing.

Ms. Harbers disputes only the first standing element—injury-in-fact.  (*See* Mot. at 15.)  To demonstrate an injury-in-fact, Ms. Harbers must allege "an invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  The court finds that Ms. Harbers has met the particularization prong of the injury-in-fact requirement because Ms. Harbers alleges that Eddie Bauer violated her statutory rights, not just the statutory rights of others.  *See Spokeo*, 136 S. Ct. at 1548. Moreover, neither party contests that Ms. Harbers satisfies the particularization prong. (*See generally* Mot.; Resp.)  Therefore, the only element at issue is whether Ms. Harbers alleges a "concrete" injury.

## C.    Concreteness

In *Spokeo*, the United States Supreme Court emphasized that to be concrete, an injury "must be 'de facto'; that is, it must actually exist."  136 S. Ct. at 1548.  However, certain intangible harms can constitute a concrete injury.  *Id*. at 1549.  Indeed, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'"  *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at 578).  Nevertheless, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*  Because "Article III standing requires a concrete injury even in the context of a statutory violation," a plaintiff may not "allege a

bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Id.* However, "*some* statutory violations, alone, do establish concrete harm." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo II*").

The Ninth Circuit has held that an alleged violation of a statutory provision that protects a substantive right is sufficient to establish concrete injury. *See, e.g.*, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (concluding that the plaintiff did not need to allege any additional harm beyond the alleged Telephone Consumer Protection Act ("TCPA") violation to obtain standing). The Ninth Circuit held that "[t]he TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consent," and "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Id.* Similarly, the Ninth Circuit held that the plaintiffs established a concrete injury-in-fact by alleging a violation of the Illinois Biometric Information Privacy Act ("BIPA"). *See Patel*, 932 F.3d at 1274 ("Because the privacy right protected by BIPA is the right not to be subject to the collection and use of such biometric data, Facebook's alleged violation of these statutory requirements would necessarily violate the plaintiffs' substantive privacy interests.").

In addition, "the violation of a procedural right granted by statute can be sufficient in some circumstances" to constitute a concrete injury-in-fact without the plaintiff alleging any additional harm. *Spokeo*, 136 S. Ct. at 1549. In evaluating whether a plaintiff suffered a concrete injury-in-fact due to an alleged procedural violation, the court must ask "whether the statutory provisions at issue were established to protect [the

plaintiff's] concrete interests (as opposed to purely procedural rights)." *Spokeo II*, 867 F.3d at 1113. If so, the court asks, "whether the specific procedural violations alleged in [the] case actually harm, or present a material risk of harm to, such interests." *Id.*

1. CEMA

In this case, Eddie Bauer argues that CEMA's legislative history makes clear that the statute was enacted to protect consumers and internet service providers against a wide range of concrete harms associated with spam e-mail. (*See* Resp. at 8.) Ms. Harbers responds that CEMA cannot create an injury-in-fact because state legislatures lack the constitutional authority to create Article III standing by enacting a statute. (Reply at 15.) Ms. Harbers asserts that Congress, not state legislatures, have authority over federal jurisdiction. (*See id.* (citing *Greenberg v. Dig. Media Sols. LLC*, No. C19-00355-VC, 2019 WL 1986758, at *1 (N.D. Cal. May 1, 2019)) ("[E]ven if Congress can elevate an injury to Article III status, it may not follow that a state legislature can do so as well.").)

In addressing these arguments, the court begins by asking whether CEMA was established to protect "a concrete interest that is akin to a historical, common law interest." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1174 (9th Cir. 2018). Thus, we consider both history and legislative judgment. *See Patel*, 932 F.3d at 1270. The Washington State Legislature created CEMA "to address unwanted e-mail messages." *Wright*, 406 P.3d at 1151. Enacted in 1998, CEMA's false or misleading subject line provisions were included in the original statute. *See* Laws of 1998, ch. 149, § 3 (codified in RCW 19.190.020); Laws of 1998, ch. 149, § 4 (codified in RCW 19.190.030). In 1999, the Washington Legislature amended the commercial e-mail

provisions. *See* Laws of 1999, ch. 289, § 2; Laws of 1999, ch. 289, § 3. However, the amendment "changed little in the original statute" and "[i]ts most notable effect was to clarify that assisting the transmission of a commercial e-mail violates the CPA," in addition to initiating the transmission.[4] *Wright*, 406 P.3d at 1151.

Although addressed by neither party, the court takes judicial notice of the findings listed in the CEMA bill enacted by the Washington Legislature,[5] which are included in section one of Engrossed Substitute House Bill 2752.[6] *See also* Laws of 1998, ch. 149, § 1 (codified in RCW 19.190.050; repealed by Laws of 1999, ch. 289, § 4). The legislative findings include the following statement:

> The legislature finds that the volume of commercial [e-mail] is growing, and the consumer protection division of the attorney general's office reports an increasing number of consumer complaints about commercial [e-mail]. Interactive computer service providers indicate that their systems sometimes cannot handle the volume of commercial [e-mail] being sent and that filtering

---

[4] Relating to this inquiry, Eddie Bauer requests that the court take judicial notice of pieces of legislative history relating to early versions of the original CEMA bill. (*See* RJN (Dkt. # 17) at 2; *id.*, Ex. A, B.) Ms. Harbers objects to Eddie Bauer's use of "superseded and never-enacted findings of fact contained in early versions of the 1998 CEMA bill," because the enacted versions did not include findings relating to unsolicited e-mails and invasions of privacy. (*See* Reply at 14.) The court declines to rule on Eddie Bauer's request for judicial notice because Eddie Bauer's citations and arguments relating to those pieces of early legislative history are unnecessary to the outcome of this motion. The court also finds it unnecessary to resolve Eddie Bauer's request for judicial notice of a prior order from this court. (*See* RJN (Dkt. # 17) at 2; *id.*, Ex. C.) Although a district court may take judicial notice of "undisputed matters of public record . . . including documents on file in federal or state courts," *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012), the court declines to rule on Eddie Bauer's request because the order is unnecessary to the outcome of this motion.

[5] The court may take judicial notice *sua sponte*. *See* Fed. R. Evid. 201(c)(1). Information published on government websites, including legislative history, is a proper subject of judicial notice. *See, e.g. Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1120 n.8 (9th Cir. 2017) (granting a motion to take judicial notice of legislative history).

[6] *See* Engrossed Substitute H.B. 2752, 55th Leg., Reg. Sess. (Wash. 1998).

ORDER - 12

systems fail to screen out unsolicited commercial [e-mail] messages when senders use a third party's internet domain name without the third party's permission, or otherwise misrepresent the message's point of origin.

The legislature seeks to provide some immediate relief . . . by prohibiting the sending of commercial [e-mails] that use a third party's internet domain name without the third party's permission, misrepresent the message's point of origin, or contain untrue or misleading information in the subject line.

Engrossed Substitute H.B. 2752, 55th Leg., Reg. Sess. (Wash. 1998).

Beyond these findings, the legislature also declared that commercial e-mails containing false or misleading subject lines violate the CPA. *See* RCW 19.190.030(1). In effect, the legislature authorized the recipient of a false or misleading e-mail "to pursue the remedies afforded by the CPA," which include bringing "a civil action against the sender for the greater of $500 or actual damages." *Gragg*, 145 F. Supp. 3d at 1051 (quoting Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998)). Thus, the legislative findings and the CPA declaration support the conclusion that CEMA was enacted to protect the public's interest in being free from certain forms of deceptive spam.

In *Heckel*, the Washington Supreme Court found that the kind of deceptive spam restricted by CEMA harms businesses and individual internet users because it takes up time, causes frustration, "compound[s] the problems that [Internet Service Providers] face in delivering and storing the bulk messages," and makes it "virtually impossible to distinguish spam from legitimate personal or business messages." *Heckel*, 24 P.3d at 410 (alterations and internal quotation marks omitted). "This cost-shifting—from deceptive spammers to businesses and e-mail users—has been likened to sending junk mail with

postage due or making telemarketing calls to someone's pay-per-minute cellular phone."

*Id.* Although CEMA does not eliminate bulk email advertisements, "the truthfulness

requirements . . . make spamming unattractive to many fraudulent spammers, thereby

reducing the volume of spam." *Id.* at 411 (internal quotation marks omitted).

The harms resulting from deceptive commercial e-mails resemble the type of

harms remedied by nuisance or fraud actions. *See Silverstein v. Keynetics, Inc.*, No.

C18-4100JAK, 2018 WL 5795776, at *9 (C.D. Cal. Nov. 5, 2018) (finding that Cal. Bus.

& Prof. Code § 17529.5,[7] which prohibits the transmission of commercial e-mail with

certain characteristics, "protects interests and prohibits behavior that are similar to those

at issue in actions for nuisance and fraud"). Actions to remedy "nuisance have long been

heard by American courts." *Van Patten*, 847 F.3d at 1043. Thus, under CEMA,

individuals have a right to be free from certain forms of deceptive commercial e-mail

advertisements, and the statute imposes restrictions to accomplish this goal and decrease

the risk of harm related to deceptive spam practices.

Additionally, Ms. Harbers' argument that state statutes cannot support Article III

standing is contradicted by Ninth Circuit authority reaching the opposite conclusion. *See*

*Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("[S]tate law can create

interests that support standing in federal courts. If that were not so, there would not be

---

[7] Cal. Bus. & Prof. Code § 17529.5(a) makes it unlawful to send a commercial e-mail if the e-mail (1) "contains or is accompanied by a third-party's domain name without the permission of the third party," (2) "contains or is accompanied by falsified, misrepresented, or forged header information," or (3) "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." *See* Cal. Bus. & Prof. Code §§ 17529.5(a)(1)-(3).

Article III standing in most diversity cases, including run-of-the-mill contract and property disputes. State statutes constitute state law that can create such interests."). The Ninth Circuit recently held that alleged violations of BIPA, an Illinois state law, established a concrete injury sufficient to confer Article III standing. *Patel*, 932 F.3d at 1275. Given this authority, "there is no good reason why the judgment of a state legislature should be treated as less important than that of Congress in deciding when the violation of a statutory grant in itself amounts to a real and concrete injury." *See Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 952-53 (N.D. Cal. 2018).

For the foregoing reasons, the court concludes that CEMA was enacted to protect concrete interests. *See Van Patten*, 847 F.3d at 1043 ("The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm.").

2. Statutory Violations of Substantive Rights

Having determined that CEMA was enacted to protect concrete interests, the court must examine the nature of Ms. Harbers' alleged violations. *See Dutta*, 895 F.3d at 1174. Eddie Bauer argues that RCW 19.190.020 is a "substantive provision." (*See* Resp. at 8.) Eddie Bauer asserts that "[b]y bringing claims under CEMA, [Ms. Harbers] alleges that her rights under the statute were violated," which sufficiently establishes an injury-in-fact without requiring allegations of additional harm. (*Id.* at 13.) Ms. Harbers counters that Eddie Bauer "fails to explain why the 'false or misleading subject line' provisions of CEMA create a substantive right of this magnitude." (Reply at 14.)

Further, Ms. Harbers argues that "CEMA does not require the plaintiff to plead or prove a concrete injury-in-fact because the CEMA statute deems an injury to have occurred as a matter of law if the statute is violated."  (Mot. at 12 (citing *Wright*, 406 P.3d at 1155).)

On its face, CEMA's false or misleading subject line prohibition resembles the TCPA's prohibition against unsolicited telemarketing at issue in *Van Patten*, because RCW 19.190.020 precludes transmission of commercial e-mails with certain characteristics.  *See Van Patten,* 847 F.3d at 1043 ("Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated.")  CEMA identifies a right to be free from deceptive commercial e-mails, which suffers anytime a prohibited message is transmitted.  *See Silverstein*, 2018 WL 5795776, at *9 ("Like . . . the TCPA, Cal. Bus. & Prof. Code § 17529.5 identifies a substantive right . . . that suffers *any time* a prohibited spam message is transmitted.") (internal quotation marks and citation omitted).  Consequently, Ms. Harbers' alleged CEMA violation is necessarily an allegation that Eddie Bauer caused her the kind of concrete injury that the Washington Legislature sought to prevent in enacting CEMA.  *See* Engrossed Substitute H.B. 2752, 55th Leg., Reg. Sess. (Wash. 1998) ("The legislature finds that the volume of commercial [e-mail] is growing, and the consumer protection division of the attorney general's office reports an increasing number of consumer complaints about commercial [e-mail].");  *Wright*, 406 P.3d at 1151 ("[CEMA] was created to address unwanted e-mail messages referred to as 'spam.'")  Therefore, Ms. Harbers need not allege additional harm beyond the alleged CEMA violation to allege a concrete injury-in-fact.

Further, the court does not agree with Ms. Harbers' argument that her complaint alleges no injury because Washington State Law does not require a plaintiff pleading a CPA claim based on a CEMA violation to allege an injury independent of the alleged CEMA violation. (*See* Mot. at 12-13.) Ms. Harbers maintains that "[b]ecause injury is established as a matter of law" and Ms. Harbers intentionally does not allege a separate harm, she did not plead injury. (*Id.*) However, the Washington Supreme Court concluded that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law, which relieves plaintiffs from alleging injury independent of the alleged CEMA violation. *See Wright*, 406 P.3d at 1155 ("RCW 19.190.040's automatic damages language, the legislative intent to limit the practice of sending unsolicited commercial text messages, and the legislative intent to treat text messages in the same manner as spam e-mail weigh against requiring a CEMA plaintiff to *independently* prove injury and causation.") (emphasis added). Ms. Harbers concedes as much, stating that CEMA "establishes the injury and causation elements of a CPA claim as a matter of law." (*See* Mot. at 12 (quoting *Wright*, 403 P.3d at 1155).) Ms. Harbers' argument, then, is—in effect—that she does not need to allege injury because she already alleged injury. Thus, the court concludes that Ms. Harbers' allegation that she received marketing e-mails from Eddie Bauer in violation of CEMA's prohibition on sending commercial e-mails with false or misleading subject lines satisfies the concreteness requirement, even absent additional allegations of harm.

//

//

### 3. Violations of Procedural Rights

Even if Ms. Harbers was correct that she alleges only a procedural CEMA violation, Ms. Harbers' alleged violation would be sufficient to confer Article III standing. Ms. Harbers argues she "does not affirmatively allege that she was harmed by spam," and therefore, the court "should not read into her allegations an implicit but unstated injury by spam." (Reply at 9.) Eddie Bauer argues that, even if RCW 19.190.020 and RCW 19.190.030 are "procedural" provisions, "the underlying purpose of CEMA is sufficient to establish Article III standing," without alleging any additional harm. (*See* Resp. at 14.) The court agrees with Eddie Bauer.

"[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo,* 136 S. Ct. at 1549. In evaluating an alleged injury from a procedural violation, the court asks: (1) whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights), and (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests. *Spokeo II*, 867 F.3d at 1113. As to the first inquiry, based on the foregoing analysis, the court concludes that CEMA's false or misleading subject line provisions were designed to protect Ms. Harbers and other Washington residents from the nuisance of unwanted commercial e-mails. *See Wright*, 406 P.3d at 1151 ("[CEMA] was created to address unwanted e-mail messages referred to as 'spam.'"). Thus, CEMA protects concrete interests.

//

In making the second inquiry, the alleged violations must not be a "bare procedural violation, divorced from any concrete harm" CEMA was designed to prevent. *See Spokeo*, 136 S. Ct. at 1549. Ms. Harbers asserts that she was not harmed. (*See* Mot. at 16 ("[Ms. Harbers] has alleged no concrete tangible or intangible harm.").) Ms. Harbers' arguments notwithstanding, Ms. Harbers does allege that she was deceived by Eddie Bauer's e-mails. (*See* FAC ¶¶ 25-26 ("[Ms. Harbers] thought—as would an ordinary and reasonable consumer—that the 'xx% Off' statements were a percentage off the price at which Eddie Bauer previously offered its products in good faith for a significant period of time."), ("[Ms. Harbers] thought—as would an ordinary and reasonable consumer—that the off 'Everything' statements indicated that *all* of the products offered at Eddie Bauer's stores and website were being offered at a discount.").) The legislative history of CEMA indicates that the statute was designed to address unwanted commercial e-mails by restricting the types of deceptive spam most likely to not be screened out by filtering systems. *See* Engrossed Substitute H.B. 2752, 55th Leg., Reg. Sess. (Wash. 1998) ("Interactive computer service providers indicate that their systems sometimes cannot handle the volume of commercial [e-mail] being sent and that filtering systems fail to screen out unsolicited commercial [e-mail] messages."); *see also Heckel*, 24 P.3d at 411 ("[CEMA's] truthfulness requirements . . . make spamming unattractive to many fraudulent spammers, thereby reducing the volume of spam.") (internal quotation marks omitted). Therefore, the CEMA violations alleged by Ms. Harbers are not divorced from the harms of deceptive spam, because commercial e-mails containing false or misleading subject lines pose a risk to an individual's interest in being

free from the nuisance and loss of productivity, given the fact that such e-mails are less

likely to be screened by a service provider's filtering system. *See Heckel*, 24 P.3d at 410

("[T]he use of false or misleading subject lines further hampers an individual's ability to

use computer time most efficiently.") Thus, even if RCW 19.190.020 and RCW

19.190.030 were procedural rather than substantive provisions, Ms. Harbers need not

allege any additional harm beyond the CEMA violations to allege a concrete

injury-in-fact sufficient to confer Article III standing.

Ms. Harbers' reliance on *Blanchard* is unavailing. (*See* Reply at 9 ("[I]f Ms.

Harbers' pleading does not affirmatively allege that she was harmed by spam, then the

[c]ourt should not read into her allegations an implicit but unstated injury by spam.")

(citing *Blanchard v. Fluent, LLC*, No. C17-4497-MMC, 2018 WL 4373099, at *2 (N.D.

Cal. Sep. 13, 2018).) In *Blanchard*, the court held that the plaintiffs failed to establish an

injury-in-fact because Cal. Bus. & Prof. Code § 17529.5(a) is "a statute prohibiting the

making of false or misleading commercial speech," which requires plaintiffs to allege an

injury caused by such speech in order to have standing. *Blanchard*, 2018 WL 4373099,

at *2. Unlike CEMA, to bring a claim under California's "false advertising" laws,

"plaintiffs must meet an economic injury-in-fact requirement," such as showing a

plaintiff relied on the challenged advertisement in purchasing a product. *Reid v. Johnson

& Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (referencing Cal. Bus. & Prof. Code

§§ 17200-10; Cal. Bus. & Prof. Code §§ 17500-09; and Cal. Civ. Code §§ 175084).

However, for claims brought under Cal. Bus. & Prof. Code § 17529.5, not all courts have

followed *Blanchard* in requiring plaintiffs to allege additional injury. *See, e.g.*,

*Silverstein*, 2018 WL 5795776, at *9; *Durward v. One Techs. LLC*, No.

C19-6371-GW-AGRx, 2019 WL 4930229, at *8 n.5 (C.D. Cal. Oct. 3, 2019) ("[T]he

injury occurs when the individual receives the spam message; reliance on the deceptive

content is not required to create an injury.").

      Moreover, unlike California's "false advertising" laws, there is no statutory

requirement in CEMA to plead an "economic injury-in-fact." *See Hoffman*, 2017 WL

176222, at *4 (concluding that the plaintiff successfully stated a CPA claim under RCW

19.190.030(1), although he failed to allege additional injury to his business or property).

Indeed, Ms. Harbers concedes that an alleged CEMA violation "establishes the injury and

causation elements of a CPA claim as a matter of law." (*See* Mot. at 12 (quoting *Wright*,

403 P.3d at 1155).)

      Ms. Harbers' argument distinguishing solicited and unsolicited e-mails is similarly

unavailing. Ms. Harbers contends that she did not suffer harm because "at no point in

[the FAC] . . . does Ms. Harbers allege that Eddie Bauer's e-mails to her were unsolicited

or unwanted." (*See* Reply at 9.) Instead, Ms. Harbers pleads that she "would like to

continue to receive Eddie Bauer's commercial emails, provided that the subject lines of

the emails do not contain false or misleading information." (*See* FAC ¶ 32.) However,

given that Ms. Harbers' desire to continue receiving Eddie Bauer commercial e-mails is

contingent upon such e-mails not containing false or misleading information in the

subject line, by alleging she received such false or misleading e-mails, Ms. Harbers does

in fact allege such an injury.

*//*

**D.    Summary**

The court concludes that Ms. Harbers pleaded a concrete injury-in-fact by alleging that Eddie Bauer violated the CPA by way of RCW 19.190.020(1)(b).  CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines resembles the substantive provision raised in *Van Patten* and creates a substantive right to be free from deceptive commercial e-mails.  However, even if Ms. Harbers' CEMA allegations were procedural, Ms. Harbers has still alleged a concrete injury. Because the alleged violation presents at least a material risk of harm to an individual's concrete interest in being free from deceptive commercial e-mails, which CEMA was enacted to protect, Ms. Harbers need not allege any additional harm in order to meet the concreteness requirement.  Consequently, Ms. Harbers has sufficiently pleaded an injury-in-fact and satisfies the constitutional requirement of Article III standing.

## IV.    CONCLUSION

Based on the foregoing analysis, the court DENIES Ms. Harbers' motion to remand (Dkt. # 13).

Dated this 27th day of November, 2019.

JAMES L. ROBART
United States District Judge